**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**JAMES A. COSS, JR.,**

       **Plaintiff,**

**v.**                                       **CIVIL ACTION NO.:** <u>2:23-cv-00180</u>

**DAVID TETERS, in his individual and**
**official capacity,**
**TYLER TETERS, in his individual capacity,**
**CONNOR ABRAHAM, in his individual**
**and official capacity,**
**JACOB DENNISON, in his individual and**
**official capacity,**
**TYLER WINDLAND, in his individual and**
**official capacity,**
**CODY MILLER, in his individual and**
**official capacity,**
**JOHN DOES 1-8, in their**
**individual and official capacities,**

       **Defendants.**

## <u>COMPLAINT</u>

COMES NOW the Plaintiff, James Coss (hereinafter referred to as "Mr. Coss"), by and through his counsel, Ryan J. Umina, Esq., the law firm of Umina Legal, PLLC, and J. Morgan Leach, Esq., and for his Complaint, states as follows:

### Introduction

The instant action highlights one of the biggest issues in policing—senseless brutality, motivated by a sense of invincibility and power over the citizens they have been sworn to protect, followed by inaction against the officer by law enforcement.

In the case at bar, Defendant Officer David Teters ("Officer Teters") captured an unidentified male on his home security camera footage attempting to break into his police cruiser outside of his home. Upon reviewing the footage, he decided to embark on a manhunt for the

suspect, enlisting the help of his sons - one of which is a minor. As they proceeded down a few neighborhood blocks they observed a man, later to be identified as the Plaintiff, Mr. Coss, in the front yard of 2108 Maxwell St. Parkersburg, WV.

Officer Teters and his sons erroneously believed the then sixty-two year old Mr. Coss was their suspect and intentionally and violently attacked him in a residential neighborhood, in broad daylight – punching, kicking, and hitting him, nearly beating him senseless.

Unaware of the purpose of the attack, a bystander, Mr. Still, attempted to engage Officer Teters to defend Mr. Coss; however, Officer Teters immediately identified himself as an "officer of the law" in an attempt to intimidate Mr. Still and ensure he would not interfere.

During the malicious beating of Mr. Coss, Officer Teters' wife stood not far from the attack, live streaming the beating on Facebook. This video was posted to a group page called "What's happening in PARKERSBURG." When a neighbor who also witnessed the beating commented on the post that they were attacking the wrong man, Officer Teters wife quickly deleted the post. Despite the fact that this video could be subpoenaed from Facebook to prosecute Officer Teters and his children, upon information and belief, no such action has been taken by the Parkersburg, West Virginia, police officers called to the scene.

After the beating stopped, Mr. Coss, a 62-year-old man with a pacemaker, laid there pummeled by an Officer trained in combat and his two strong sons, who were eager to seek revenge and inflict punishment. Mr. Still, one of the bystanders who was threatened by Officer Teters, immediately called the Parkersburg Police Department ("Parkersburg PD"). Upon arrival, Parkersburg PD, including Connor Abraham, Jacon Dennison, and Tyler Windland, swarmed Mr. Coss, treating him as though he were a criminal rather than the victim.

After being informed of the circumstances by their fellow Officer, the clear assailant in this case, the Parkersburg PD officers on scene reviewed the footage of the suspect and promptly determined that the man in the surveillance footage was not Mr. Coss.

When it was realized that the attacking officer and his vigilante sons in fact attacked a completely innocent 62-year-old man with a pacemaker, who just happened to be wearing similar pants as their suspect, Officer Teters quickly attempted to make amends with Mr. Coss, knowing full well that what he and his sons had just done was a criminal act. He apologized to Mr. Coss, invited him over for a cookout, and attempted to persuade him not to press any charges against them. Mr. Coss simply and justifiably wanted to leave the scene as soon as possible—as he was just attacked by an officer and treated as a criminal by Parkersburg PD – the same police department he was now supposed to trust to pursue charges against a fellow officer. Mr. Coss informed the Parkersburg PD officers who arrived on the scene that he feared retaliation if he pressed charges against Teters for what they had done to him.

Though hesitant to do so for his own safety, Mr. Coss followed up with Parkersburg PD to press charges against the Officer and his sons, but nothing has ever been done. The undersigned counsel then contacted the Wood County Prosecuting Attorney's Office about the matter to ensure it was handled properly, however, no charges were filed. As shown in the attached exhibit, the Parkersburg PD closed the case without pursuing any charges, despite multiple eye witness accounts of the brutal attack. Moreover, at least some of the attack was live streamed and/or posted on Facebook, by Mrs. Teters. The Parkersburg PD took no efforts to obtain or preserve that video. The attacking Officer is still employed by the Williamstown, WV Police Department and was never disciplined for his actions that day.

The Plaintiff suffered broken ribs and other serious injuries and resulting illnesses, but could not have an MRI performed to assess the full damage done to him due to having a pacemaker.

## Parties, Jurisdiction, and Venue

1.  Plaintiff James Coss is a resident of Wood County, West Virginia.

2.  Defendant Officer David Teters, is a resident of Wood County and a police officer with the Williamstown Police Department.

3.  Defendant Tyler Teters is the son of Officer David Teters and a resident of Wood County.

4.  Defendant Officer Connor Abraham is an officer with the Parkersburg Police Department and a resident of Wood County.

5.  Defendant Officer Jacob Dennison is an officer with the Parkersburg Police Department and a resident of Wood County.

6.  Defendant Officer Tyler Windland is an officer with the Parkersburg Police Department and a resident of Wood County.

7.  Defendant Officer Cody Miller is an officer with the Parkersburg Police Department and a resident of Wood County.

8.  Defendant John Doe 1 is the minor son of Officer David Teters and a resident of Wood County.

9.  Defendants John Doe 2 and John Doe 3 are possible individuals involved in the dispute, unidentified within the Primary Narrative of Responding Officer Conner Abraham.

10. Defendant John Doe 7 was the Police Chief of the Parkersburg Police Department at the time of the events described herein and will be identified through discovery.

11. Defendant John Doe 8 was a Captain with the Parkersburg Police Department at the time of the events described here and will be identified through discovery.

12. Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C §§1331,1343, and 1367.

13. Venue is proper before this Honorable Court pursuant to 28 U.S.C. §1391(b).

14. Plaintiff asserts violations of his Constitutional Rights under the First, Fourth, and Fourteenth Amendments, pursuant to 42 U.S.C. §1983.

**Background and Facts**

15. On or about April 24, 2022, ("Day of the Attack") Mr. Coss was visiting a residence located at 2108 Maxwell Avenue, Parkersburg, West Virginia, just a few blocks from the city park, to discuss assisting in the repair of a friend's vehicle.

16. Importantly, at all times relevant herein, Mr. Coss was a senior citizen with a pacemaker.

17. As of the date of this filing, Mr. Coss is undergoing treatment for late stage lung cancer, which, upon information and belief, was either caused by or was progressively accelerated by the injuries Mr. Coss sustained as a result of the beating described herein and throughout.

18. On the Day of the Attack, as Mr. Coss stood at the end of the driveway saying his goodbyes, Defendants David Teters and his sons, Tyler Teters and John Doe No. 1 ("Teters Family Defendants"), aggressively approached him.

19. Unbeknownst to Mr. Coss, Defendant David Teters, a police officer with the Williamstown, West Virginia, police department, enlisted the assistance of his two sons to track down an unidentified man who had been seen on their security camera tampering with

Officer Teters' police cruiser.

20. As the Teters Family Defendants approached, Mr. Coss walked around the vehicle next to him in the driveway, at which point Defendant David Teters exclaimed "[t]hat's him!" and the Teters Family Defendants proceeded to charge at the Plaintiff, intentionally causing him fear and apprehension of imminent, offensive contact.

21. Upon information and belief, the Defendants had mistaken the Plaintiff to be the individual they were searching for who they believed attempted to break into Defendant David Teters' Williamstown, West Virginia, police cruiser.

22. Following the aforementioned exclamation and subsequently identifying himself as a police officer, Defendant David Teters, completely unprovoked, began to strike the Plaintiff, initiating an attack on the misidentified, innocent senior citizen.

23. Defendant David Teters attacked Mr. Coss based solely on recognizing the color of pants he was wearing from a surveillance video that captured an individual tampering with Defendant Teters police cruiser.

24. The Teters Family Defendants did not provide the Plaintiff any opportunity to explain or defend himself prior to the unprovoked attack.

25. The Teters Family Defendants intentionally and unlawfully caused a harmful and offensive contact with the Plaintiff.

26. Following the initial strikes by Defendant David Teters, Defendant Tyler Teters, and Defendant John Doe 1 joined the attack and began to strike the Plaintiff with closed fists.

27. Upon information and belief, Defendants John Doe 2 and John Doe 3 also began to strike the defenseless Plaintiff.

28. Being much older and weaker than the attacking Defendants, as well as being

significantly outnumbered, the Plaintiff had no choice but to cover himself for protection in an attempt to weather the vicious attack.

29. Upon information and belief, the attack was witnessed by a number of bystanders, at least one of whom videoed the attack and posted it to Facebook.

30. Upon information and belief, the Plaintiff became aware at some point before or during the attack that at least one of the Defendant attackers was an off-duty police officer.

31. During the attack, the Plaintiff was knocked to the ground by the attacking Defendants, at which time Defendant Tyler Teters, jumped upon the Plaintiff and continued to strike him in the head and face while pinning the Plaintiff to the ground.

32. At some point during the attack, Defendant David Teters shouted "[t]hats what you get for trying to break into my police car!"

33. Upon information and belief, it was the intent of the Defendants to injure the Plaintiff in order to punish him for attempting to break into Officer Teters police cruiser.

34. At some point during the attack, Mr. Still, who lived at 2108 Maxwell Ave., Parkersburg, WV and had witnessed the attack from the beginning, attempted to defend Mr. Coss by pushing Officer Teters off of the Plaintiff.

35. Upon Mr. Still's attempt to intervene, Defendant David Teters immediately identified himself as "an officer of the law" in order to intimidate Mr. Still away from interfering with the beating, using his position as a law enforcement officer to ensure he and his sons could continue their attack on Mr. Coss.

36. Upon information and belief, another witness to the attack, Emory Landis, stepped in to defend Mr. Coss by attempting to stop John Doe 1 from his attack on Mr. Coss.

37. Upon information and belief, when Mr. Landis attempted to intervene, Officer

Teters threatened Mr. Landis with a weapon that he had concealed in his pocket, stating that he was a police officer and not to interfere.

38. Defendant David Teters further threatened to have Mr. Landis arrested for attacking his son, John Doe 1, in defense of Mr. Coss, stating that he would go to jail because his son is a minor.

39. The Defendants attack was motivated by hatred, personal spite, and a desire to injure the Plaintiff as a form of punishment, with a conscious disregard for Mr. Coss's health, safety, and welfare.

40. Upon information and belief, Parkersburg Police Department, by and through Ptl. C.G. Abraham (hereinafter "CGA"), accompanied by Defendants Ptl. Jacob Dennison and Ptl. Tyler Widland (collectively "Responding Officers"), reported that upon arriving at the scene, the Officers observed seven (7) males in an altercation.

41. Upon arrival of the Responding Officers, the Defendants ceased their attack on the Plaintiff.

42. Upon information and belief, the Defendant attackers only ceased the attack due to the arrival of officers from the Parkersburg Police Department.

43. The Defendant Responding Officers immediately began to treat the Plaintiff as though he was the one who had just committed assault and battery, rather than treating him as the victim of a brutal and senseless attack.

44. Mr. Coss, upon making contact with Parkersburg PD officers, stated that, "once this circus is over, I am considering pressing charges".

45. Defendant Responding Officer CGA observed the camera footage of the events leading to the Defendant's accusations of theft and confirmed it was not the Plaintiff on the

video.

46. Once the Officers reviewed the surveillance footage, one of the Officers walked up to Mr. Coss, grabbed his arm, and inspected his body to see if there were matching tattoos from the person in the surveillance camera footage.

47. Parkersburg PD then inquired of Mr. Coss as to how long he's been there, to which Mr. Landis informed the Officer that Mr. Coss had been there for approximately 15 minutes.

48. The Officer then responded, "[t]hat was long enough for you [Mr. Coss] to break into the police cruiser," again treating Mr. Coss as the criminal in the incident.

49. Fearful he was about to be arrested, Mr. Coss responded, "I'm done."

50. Upon the visual inspection, the officer turned to his fellow officers and the Teters Family Defendants and stated, "you got the wrong guy".

51. Upon information and belief, the Teters Family Defendants only identified the Plaintiff as their intended suspect based on the color of his pants.

52. At some point in time, central dispatch advised the responding officers as to the actual location of the theft suspect and Ptl. T.D. Windland located the suspect at 20th St. and Washington Ave, Parkersburg, WV.

53. CGA observed the purported vehicle in which the alleged theft took place and observed that the windows had been left all the way down.

54. Defendant Tyler Teters confirmed nothing was taken from the vehicle.

55. Upon information and belief, the vehicle in question was not a civilian vehicle belonging to Defendant Tyler Teters, but rather a police vehicle belonging to Defendant David Teters who was investigating the incident in his official capacity as an Officer of the

Williamstown Police Department.

56. Upon realizing the Defendants had just attacked an innocent man, Defendant David Teters immediately attempted to make amends with the Plaintiff.

57. Defendant David Teters apologized, invited Mr. Coss to come over for a cookout, and lobbied the Plaintiff against pressing charges against him and his co-conspirators.

58. Upon information and belief, Defendant David Teters was aware he had just acted criminally – committing assault and battery – and the Plaintiff would be within his legal and Constitutional rights if he chose to press charges against him.

59. Mr. Coss was subsequently interviewed by the Defendant Responding Officers at the scene of the attack, at which point the Plaintiff expressed his awareness to the interviewing officer that at least one Defendant attacker was a police officer.

60. The Officers then asked Mr. Coss if he would like to press charges, to which, out of his fear of being arrested himself, he replied, "I just want to get out of here."

61. Upon information and belief, the Defendant Responding Officers were treating the Plaintiff as the suspect of a crime, rather than a victim of one, in order to incite fear and intimidate him away from formally pressing charges on a fellow police officer.

62. Defendant David Teters instructed the Defendant Responding Officers that he wanted charges pressed against Mr. Coss and Mr. Landis.

63. Upon information and belief, the threat of charges by Defendant David Teters were intended to intimidate and incite fear into Mr. Coss that he may have charges filed against him in retaliation, if he formally pressed charges on the attackers and to intimate Mr. Landis against disclosing what he had witnessed during the attack.

64. On the Day of the Attack, Mr. Coss did inform the Defendant Responding

Officers that he had intentions to press charges, however, based on the chaos that had just occurred, being in severe pain from his injuries, his treatment by the Defendant Responding Officers, and statements made to him about having charges filed against him, Mr. Coss felt that the Defendant Responding Officers would turn the situation around on him, so he panicked and left the scene at the earliest possible moment that he was permitted to do so.

65. Due to his fear for repercussions and the manner in which he was treated by the Defendant Responding Officers, the Plaintiff's only concern at the time of the interview at the scene of the attack was concluding the matter and leaving the scene to safety, away from the Police Officers, and tend to his injuries.

66. Upon information and belief, The Defendant Responding Officers gave no assurances to the Plaintiff that he was in no danger of repercussions and that he was within his Constitutional Rights to press charges if he chose to.

67. The Defendant Responding Officers falsely stated in their report that "no one was seriously hurt and neither party wanted to press charges", however, as described herein, this was not true, and was an attempt by the Parkersburg PD to censor Mr. Coss and protect a fellow Officer Teters and his son for their conduct.

68. Mr. Coss was in fact significantly injured, suffering a blackened eye, bruising to his ribs and back, broken ribs, and lacerations to his face. (*See* photographs of Mr. Coss's injuries attached hereto as "*Ex. 1*.")

69. The full extent of the Plaintiff's injuries could not be investigated as he survives by a pacemaker which does not permit him to receive advanced diagnostic imaging, such as MRI, absent cases of emergency.

70. Plaintiff was in fact assaulted and battered by Defendants David Teters, Tyler

Teters, and Defendants John Doe 1-3.

71. On or about April 27, 2022, after taking a couple days to get over his fear of repercussions and to heal from his injuries, Plaintiff visited the Parkersburg PD to make a formal police report against the Teters Family Defendants and spoke with Sgt. Cody A. Miller (hereinafter "Sgt. Miller").

72. Sgt. Miller said that "you will have to talk to the chief", but did agree to at least take his statement that day.

73. Plaintiff was advised by Sgt. Miller that he would have to wait for the "Chief" to call him, but he never did.

74. Plaintiff did finally receive a call from the "Captain" who indicated that they were investigating his complaint.

75. Plaintiff never received another call from anyone at Parkersburg PD regarding the incident.

76. Upon information and belief, following the Plaintiffs interview with Sgt. Miller, neither he, nor anyone at the Parkersburg PD investigated this matter further, never pursued criminal charges against any of the Teters Family Defendants, never made any attempt to contact potential witnesses, including Mr. Landis, or to obtain the Facebook Live video/posts, and never intended to do so.

77. Such a failure to investigate when presented with substantial evidence of a crime can only be the result of intentional, deliberate, and reckless disregard in light of a clear criminal violation, violating the Plaintiffs First Amendment and Due Process Rights under the Fourteenth Amendment.

78. Upon inaction by the Parkersburg PD, Plaintiff, through counsel, contacted the

Wood County Prosecutor's office in regards to the matter.

79. Upon information and belief, the Wood County Prosecutor's office has failed to, and has no intent to, take action in this matter and protect the Plaintiff's Constitutional Rights.

80. Upon information and belief, the Defendant David Teters was never disciplined by the Williamstown Police Dept. for this heinous attack and remains employed as a keeper of the peace.

81. The actions of every Defendants as described herein were deliberate, malicious and intentional acts towards Plaintiff and have caused continuing economic and non-economic damages to Plaintiff..

82. At all times relevant herein, the Defendants acted within the color of the laws, statutes, and regulations of both the federal bounds, as well as those bounds within the State of West Virginia and in doing so, deprived the Plaintiff of his federal rights granted to him under the U.S. Constitution.

**COUNT I – Assault**
**(Against Defendant David Teters, Tyler Teters, and John Doe 1)**

83. Mr. Coss hereby incorporates paragraphs 1-82 above, as if fully set forth herein.

84. An individual is liable for assault when he acts with the intent to place another in reasonable apprehension of an imminent, harmful or offensive contact.

85. By setting out with the sole purpose of finding the individual who attempted to break into the police vehicle and by shouting "that's him" immediately upon seeing the Plaintiff, and subsequently charging at him, the individual Defendants named herein made an intentional attempt and threat to inflict injury on the Plaintiff.

86. Upon hearing the individual Defendants angrily shout "that's him" as they

immediately began to storm towards him, the Plaintiff was in fear of an imminent contact.

87. Knowing he was outnumbered and that a number of the individual Defendants were much younger and stronger than him, it was apparent to the 62 year old Plaintiff of the individual Defendant's ability to inflict injury upon him, creating a reasonable apprehension of bodily harm or offensive contact.

88. The individual Defendants' actions which placed the Plaintiff in apprehension of an imminent harmful or offensive contact were done willfully, intentionally, and unlawfully.

89. The individual Defendants actions were motivated by hatred, personal spite, a desire to injure the Plaintiff and/or a conscious disregard for Mr. Coss's health, safety and welfare.

90. "An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." W. Va. Code §55-7-29.

## COUNT II – Battery
### (Against Defendants David Teters, Tyler Teters, and John Does 1-3)

91. Mr. Coss hereby incorporates paragraphs 1-90 above, as if fully set forth herein.

92. A person is liable for battery when he intentionally causes a harmful or offensive bodily contact with another person without their consent.

93. The sole purpose of the commencement of the events described herein was to seek out and physically punish the Plaintiff whom the attacking Defendants believed attempted to break into Defendant Officer Teter's police cruiser.

94. Upon locating him, the attacking Defendants began to hit the Plaintiff, striking

him with closed fists, tackling and pinning him to the ground, and continuing to strike him on the ground, resulting in intentional, offensive bodily contact and harmful force to the body of the Plaintiff.

95. In telling the Plaintiff "that's what you get for trying to break into my police car" the individual Defendants intended to punish the Plaintiff by inflicting harm on him.

96. In causing bruising and the breakage to his ribs, bruising to his back, as well as lacerations and bruising to his face, the application of force by the individual attacking Defendants named herein was harmful and offensive, and without the consent of the Plaintiff.

97. The individual Defendants' battery as described herein was willful, intentional, and unlawful.

98. The individual Defendants' actions were motivated by hatred, personal spite, a desire to injure the Plaintiff and/or a conscious disregard for Mr. Coss's health, safety and welfare.

99. "An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." W. Va. Code §55-7-29.

### COUNT III – 42 U.S.C. §1983 –
### Violation of the United States Constitution First Amendment
**(Against Defendants Connor Abraham, Jacob Dennison, Tyler Windland, Sgt. Miller, John Doe 7 and John Doe 8)**

100.    Plaintiffs hereby incorporate paragraphs 1-99 above, as if fully set forth herein.

101.    Under the Petition Clause of the First Amendment, an individual has a right to

report to the Government for a "redress of grievances", which "extends to all departments of the government."

102.    It is axiomatic that filing a criminal complaint with law enforcement officials constitutes an exercise of one's First Amendment Rights under the Petition Clause.

103.    On the Day of the Attack, the Defendant Responding Officers dissuaded the Plaintiff, through intimidation tactics, from pressing criminal charges by threatening or giving the perception of a threat of retaliation by way of criminal prosecution, which deprived the Plaintiff of his First Amendment right to report illegal activity.

104.    Following the attack, Defendant David Teters dissuaded the Plaintiff, by way of the threat of pressing charges against him, in an attempt to intimidate Mr. Coss away formally filing a police report against the Teters Family Defendants.

105.    Defendants at all times relevant to this action were acting under color of state law.

106.    By failing to pass the Plaintiff's allegations through the necessary chain of command or the flat out refusal to investigate following his subsequent presentation to the Parkersburg PD, the Defendants described herein have deprived, and are continuing to deprive, the Plaintiff of the rights secured to him by the United States Constitution under the First Amendment

107.    The Defendants have deprived the Plaintiff of this Constitutional right while acting under color of state law, and such deprivation is actionable under and may be redressed by 42 U.S.C §1983.

108.    Because the acts of the Defendants were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the

Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. See Morning v. Dillon Cty., No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting Smith v. Wade, 461 U.S. 30 (1983)).

**COUNT IV – 42 U.S.C. §1983 –**
**Violation of the United States Constitution Fourth Amendment**
**(Against Teter Family Defendants)**

109.    Mr. Coss hereby incorporates paragraphs 1-108 above, as if fully set forth herein.

110.    The Fourth Amendment guarantees one's right to be void of unreasonable search and seizure of his property.

111.    Defendants' conduct described herein and throughout unlawfully deprived Plaintiffs of their right to be free from unlawful search and seizure in violation of the Fourth Amendment of the United States Constitution. That right further creates a right to be free from excessive force during such a seizure.

112.    While presenting himself as an officer of the law, Defendant David Teters, along with his vigilante sons, unreasonably seized the Plaintiff simply because his clothes matched that of the individual they were pursuing.

113.    Upon attacking the Plaintiff, while outnumbering him in both youth and numbers and seeing no resistance from him, Defendant Teters and his co-conspirators used excessive force in their seizure by kicking, punching, and tackling him to the ground causing substantial injuries.

114.    The Defendants have deprived the Plaintiff of this Constitutional right while acting under color of state law, and such deprivation is actionable under and may be redressed by 42 U.S.C §1983.

115.     Because the acts of the Defendants were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. *See Morning v. Dillon Cty.*, No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30 (1983)).

**COUNT IV – 42 U.S.C. §1983 –**
**Violation of the United States Constitution**
**Fourteenth Amendment - Deprivation of Due Process**
**(Against Defendants David Teters, Connor Abraham,**
**Jacob Dennison, Tyler Windland, Sgt. Miller, John Doe 7, and John Doe 8)**

116.     Mr. Coss hereby incorporates paragraphs 1-115 above, as if fully set forth herein.

117.     The United States Constitution's Fourteenth Amendment prohibits the deprivation of life, property, or liberty without due process of the law and permits civil action for any individual who has been deprived of those rights.

118.     Provisions of the Fourteenth Amendment are enforceable against any person who carries a badge of authority for a State and represents such authority in some capacity, including the misuse of that authority.

119.     The attacking Defendants intentionally and unlawfully attacked the Plaintiff in an attempt to punish him for a crime they believed he committed, simply because the pants he was wearing were similar to those of the individual who they were looking for.

120.     Upon seeing the Plaintiff, Defendant Officer David Teters immediately began to attack him as a form of punishment for the crime he believed the Plaintiff had committed, without providing any opportunity to the Plaintiff to offer an explanation or defense, depriving him of his procedural Due Process Rights.

121.    At all times prior to and during the attack, Defendant David Teters made the Plaintiff and the surrounding witnesses aware that he was an officer of the law.

122.    At the conclusion of the attack, the Defendant Responding Officers used intimidation, by treating Mr. Coss like he was the criminal as described herein, in order to dissuade him from filing a complaint against the Teters Family Defendants, thereby depriving him of his Due Process Rights.

123.    Through erroneous threats of criminal charges against the Plaintiff, Defendant David Teters attempted to intimidate the Plaintiff away from pressing criminal charges against him, depriving Mr. Coss of his Due Process Rights.

124.    Upon filing his complaint, the Parkersburg PD, through Sgt. Miller, John Doe 7, and John Doe 8, intentionally, deliberately, and recklessly ignored the Plaintiff's claims and made no attempt to further investigate any crimes even when presented with undisputed evidence that a crime was committed, depriving him of his Due Process Rights.

125.    The Defendants have deprived the Plaintiff of this Constitutional right while acting under color of state law, and such deprivation is actionable under and may be redressed by 42 U.S.C §1983.

126.    Because the acts of the Defendants were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. See Morning v. Dillon Cty., No.: 4:15-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting Smith v. Wade, 461 U.S. 30 (1983)).

### COUNT V – Punitive Damages
**(Against All Defendants)**

127.    Mr. Coss hereby incorporates paragraphs 1-126 above, as if fully set forth

herein.

128.    From the onset of the events described herein, it was the intent and desire of the Defendants to injure the Plaintiff, whom they mistakenly believed attempted to break into Defendant David Teters police car, as a type of punishment, while doing so with a conscious disregard for the Plaintiff's health, safety, and welfare.

129.    In acting as the judge, jury, and executioner by taking the matter into his own hands for a crime he believed had been committed, seeking out who he believed was the culprit, and immediately attacking him as a form of punishment without allowing the Plaintiff any opportunity for explanation or defense, the Defendant David Teters deprived the Plaintiff of his procedural Due Process Rights.

130.    All actions described herein by the Defendants were willful, intentional, and unlawful.

131.    All actions described herein by the named Defendants who are occupied as officers of the law were done acting under the color of state law.

132.    The Defendants deliberate, malicious, and intentional acts toward Plaintiff have proximately caused continuing economic and non-economic damages to Plaintiff, all of which warrant and command an award of punitive damages.

133.    Because the Teters Family Defendant's actions in assaulting and battering the Plaintiff were motivated by hatred, personal spite, a desire to injure the Plaintiff and/or a conscious disregard for Mr. Coss's health, safety and welfare, he is entitled to punitive damages pursuant to W.Va. Code. §55-7-29.

134.    Because the acts of the Defendants were intentional with a reckless or callous indifference to the federally protected rights of the Plaintiff under the United States

Constitution, an award of punitive damages is appropriate to the fullest extent permitted by Federal law pursuant to 42 U.S.C §1983.

**WHEREFORE**, the above-described misconduct of the Defendants has directly and proximately caused injury to the Plaintiff and accordingly, the Plaintiff demands the following relief:

> a) Compensatory damages;
>
> b) General damages, including, but not limited to, loss of use, annoyance, inconvenience, and aggravation;
>
> c) Punitive damages;
>
> d) Pre-judgment and post-judgment interest;
>
> e) Costs and attorney's fees pursuant to 42 U.S.C. §1988; and
>
> f) Such other relief which the Court may deem proper.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY**

**James Coss**

**By Counsel**

/s/ Ryan J. Umina

_____
Ryan J. Umina, Esq. (W. Va. Bar #13056)
Umina Legal, PLLC
133 Greenbag Road
Morgantown, WV 26505
Phone: (304) 838-8024
Fax: (304) 715-3638
ryan@uminalegal.com

/s/ J. Morgan Leach

_____
J. Morgan Leach, Esq.(W. Va. Bar #13124)
J Law Firm
P.O. Box 5518 Vienna, WV 26105
(855) 444-5529 (call | text | fax)
morgan@jmorganleach.law

Jmorganleach.law