IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JAMES A. COSS, JR.,

        Plaintiff,

v.                                                   CIVIL ACTION NO.   2:23-cv-00180

DAVID TETERS, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Motion to Dismiss Defendants Conner Abraham, Jacob Dennison, Tyler Windland, Cody Miller, John Doe 7, and John Doe 8* (Document 9), the *Memorandum of Law of Defendants Conner Abraham, Jacob Dennison, Tyler Windland, Cody Miller, John Doe 7, and John Doe 8, in Support of their Motion to Dismiss* (Document 10), the *Plaintiff's Response to Defendants' Motion to Dismiss* (Document 13), the *Reply Memorandum of Law of Defendants Conner Abraham, Jacob Dennison, Tyler Windland, Cody Miller, John Doe 7, and John Doe 8, in Support of their Motion to Dismiss* (Document 14), and the *Complaint* (Document 1). For the reasons stated herein, the Defendants' motion should be granted.

**RELEVANT BACKGROUND**

On or about April 24, 2022, James Coss was outside a home on Maxwell Avenue in Parkersburg, West Virginia.[1] While Mr. Coss was discussing the repair of a friend's vehicle,

---

[1] For this motion to dismiss, the Court accepts the allegations contained in the Complaint to be true.

Defendant David Teters, and others recruited by David Teters, aggressively approached him. At some time prior to that, David Teters, a police officer with the Williamstown Police Department, had seen an unidentified man on his home security camera tampering with his police cruiser.

Without providing the Plaintiff with any opportunity to explain or defend himself, David Teters and his two sons charged the Plaintiff and began beating him. The Plaintiff did not provoke the attack and had no choice but to cover himself and attempt to withstand the beating. Eventually, the Plaintiff was knocked to the ground, at which point one of David Teter's sons, Tyler Teters, jumped on top of the Plaintiff and continued to beat him while he was on the ground. During the attack, David Teters yelled "That's him!" and "That's what you get for trying to break into my police car!" (Compl. at ¶¶ 20, 32.)

Mr. Sills, a resident of the home on Maxwell Avenue, attempted to intervene, but David Teters stated that he was "an officer of the law." (*Id.* at ¶35.) Another witness, Mr. Landis, also attempted to intervene, but David Teters threatened Mr. Landis with a weapon concealed in his pocket and stated that he was a police officer.

The beating continued until Parkersburg Police Department Patrol Officers Abraham, Dennison, and Windland arrived at the scene. The responding officers then began to treat the Plaintiff "as though he was the one who had just committed assault and battery, rather than treating him as the victim." (*Id.* at ¶ 43.) After reviewing David Teter's surveillance footage, one of the responding officers grabbed the Plaintiff's arm and inspected it to see if there were tattoos that matched the person in the surveillance footage. The responding officers questioned the Plaintiff on how long he had been at Maxwell Avenue, and when he stated he had been there for approximately fifteen minutes, the officer responded, "That was long enough for you to break into

2

the police cruiser." *Id.* at ¶ 48.) At some point thereafter, the officer turned to the Teters and stated, "You got the wrong guy." (*Id.* at ¶ 50.)

David Teters, upon realizing that he had attacked an innocent man without provocation, apologized, invited the Plaintiff to come over for a cookout, and lobbied against pressing charges against the assailants.[2] In a subsequent on-scene interview with a responding officer, the Plaintiff expressed that he knew at least one of the attackers was a police officer. When asked by the officer, the Plaintiff stated that he intended to press charges, but he declined to formally begin that process at the time. (*Id.* ¶ 64.) The Plaintiff alleges that he left the scene without pressing charges due to the combination of the chaos of the beating, his injuries, his initial treatment as a suspect by the responding officers, and the fact that the responding officers and David Teter were both law enforcement. The Plaintiff alleges that the responding officers treated the Plaintiff as the suspect of a crime to incite fear, intimidate him and to dissuade him from pressing charges against a fellow police officer. The officers gave no assurances that he was safe from repercussions. In their report on the incident, the responding officers stated that "no one was seriously hurt and neither party wanted to press charges." (*Id.* at ¶ 67.)

Approximately three days later, on or about April 27, 2022, the Plaintiff visited the Parkersburg Police Department with the intent to file a formal complaint against the Defendant and others. He spoke with Sergeant Miller, who stated that the Plaintiff would have to speak with "the Chief." The Plaintiff never received a call from the "Chief" but did receive a call from a "Captain." The Plaintiff alleges that despite making a formal complaint, no one investigated the matter further or made any attempt to contact witnesses or gather evidence. The Plaintiff has

---

[2] At one point, David Teters expressed that he wanted to press charges against the Plaintiff and Mr. Landis, but the exact timing and circumstance of this is unclear.

learned, through counsel, that the Wood County Prosecutor's Office does not intend to take action in the matter.

On March 3, 2023, the Plaintiff filed a Complaint naming fourteen (14) defendants. The Defendants can be divided into two groups. The first group is comprised of the five assailants, David Teters, Tyler Teters, and John Does 1, 2, and 3. The second group is comprised of the six Defendants who did not participate in the attack but responded to it or were members of the Parkersburg Police Department, namely Connor Abraham, Jacob Dennison, Tyler Windland, Cody Miller, and John Does 7 and 8.[3] It is the Defendants in the second group, the non-assailants, who bring this motion to dismiss.

The Complaint contains five counts, three of which are at issue in this motion, Count III – 42 U.S.C. § 1983 – Violation of the United States Constitution First Amendment; Count IV[4] – 42 U.S.C. § 1983 – Violation of the United States Constitution Fourteenth Amendment – Deprivation of Due Process;[5] and Count V – Punitive Damages.[6]

## LEGAL STANDARD

The non-assailant Defendants argue that dismissal is appropriate under both Rule 12(b)(1) for a lack of standing and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The plaintiff bears the burden to satisfy standing, and the elements of standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Accordingly, when a defendant challenges

---

[3] The Complaint names John Does 1–8, but does not state what role John Does 4, 5, or 6 played in the events detailed in the Complaint. So, although the Complaint names 14 defendants, only 11 have alleged roles.
[4] The Complaint contains two Count IVs, but the motion and this Order only encompass the Count IV alleging a violation of the Fourteenth Amendment.
[5] Count IV also names Defendant David Teters, but he is not presently moving to dismiss this Count.
[6] Count V names all the Defendants, but the assailant Defendants are not presently moving to dismiss this Count.

4

standing in a motion to dismiss, and does not dispute the veracity of a plaintiff's jurisdictional allegations, "the plaintiff is afforded the same procedural protection that exists on a motion to dismiss" under Rule 12(b)(6). *Wikimedia Found. v. Natl. Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). Here, the non-assailant Defendants do not challenge the truth of the Plaintiff's factual or jurisdictional allegations. Rather, they argue that the allegations fail to support a deprivation of a constitutional right. As such, the familiar standard for a motion to dismiss under Rule 12(b)(6) is applicable.

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

**DISCUSSION**

The Defendants argue that (1) Counts III and IV should be dismissed because there has been no violation of the Plaintiff's constitutional rights, (2) the Defendants are entitled to qualified immunity, (3) the claims against the Defendants should be treated as a *Monell* claim, which the Plaintiff has failed to sufficiently allege, and (4) punitive damages are inappropriate.

The Plaintiff brings two claims under 42 U.S.C. § 1983 against the non-assailant Defendants, arguing that their conduct violated his First and Fourteenth Amendments. "Only two . . . allegations are required to state a cause of action under [§ 1983]." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The plaintiff "must allege that some person has deprived him of a federal right [and] [s]econd, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Id.*; see also *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986). The Defendant does not dispute that the Plaintiff has alleged that the non-assailant Defendants were acting under the color of law, but rather argues that they have not deprived the Plaintiff of any federal right.

**A. The First Amendment Claims**

The Plaintiff alleges that the Defendants have twice violated his First Amendment rights under the Petition Clause. They did so initially when they "dissuaded the Plaintiff, through intimidation tactics, from pressing criminal charges" on the day of the attack and, secondly, when they failed "to pass the Plaintiff's allegations through the necessary chain of command or the flat out refusal to investigate following his subsequent presentation to [the police]." (Compl. at ¶¶ 103, 106.)

1.  **Retaliation and Criminal Complaints**

The First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const., Amdt. 1. This right "is generally concerned with expression directed to the government seeking redress of a grievance." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011). Interpreting the Petition Clause, courts have held that it protects the right to file a criminal complaint with law enforcement officials. *Entler v. Gregoire*, 872 F.3d 1031, 1043 (9th Cir. 2017); *Meyer v. Bd. of County Com'rs of Harper County, Okla.*, 482 F.3d 1232, 1243 (10th Cir. 2007); *U.S. v. Hylton*, 710 F.2d 1106, 1111 (5th Cir. 1983); *Hayes v. Walsh*, 2012 WL 2462307, at *9 (M.D. Pa. May 14, 2012), adopted in relevant part by *Hayes v. Walsh*, 2012 WL 2462316 (M.D. Pa. June 27, 2012); *Est. of Morris ex rel. Morris v. Dapolito*, 297 F. Supp. 2d 680, 692 (S.D.N.Y. 2004); *Lott v. Andrews Ctr.*, 259 F. Supp. 2d 564, 568 (E.D. Tex. 2003) ("There is no doubt that filing a legitimate criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right."); *see also Booker v. S.C. Dept. of Corrections*, 855 F.3d 533, 540 (4th Cir. 2017) (prisoner is exercising his right to petition when he files a prison grievance against a prison official); *Garcia v. Montgomery County, Maryland*, 145 F. Supp. 3d 492, 514 (D. Md. 2015) (filing a lawsuit is an activity protected by the First Amendment).

The Petition Clause clearly protects the rights of individuals to access procedures of redress, including making a legitimate criminal complaint. The Plaintiff had the right to file a criminal complaint with the Parkersburg Police Department on the day of the attack and thereafter. The question presented is whether the non-assailant Defendants infringed upon that right.

The Plaintiff argues that the combination of the non-assailant Defendants' actions on the day of the attack created a "threat of retaliation by way of criminal prosecution." (Compl at ¶ 103.) Specifically, the Plaintiff was alarmed by the responding officers treating him as a suspect, as opposed to a victim. "Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir.1993). A retaliation "cause of action targets conduct that tends to chill such activity, not just conduct that freezes it completely." *Constantine v. Rectors and Visitors of George Mason University*, 411 F. 3d 474, 500 (4th Cir. 2005) (citations omitted). A First Amendment retaliation claim requires a plaintiff to show that "the defendant[] took some action that adversely affected her First Amendment rights."[7] *Id.* at 499. "[T]hreats alone can constitute an adverse action if the threat is capable of deterring a person of ordinary firmness from engaging in protected conduct." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010); *see also Id.* at 500.

The Plaintiff has failed to allege sufficient facts to support a plausible claim that his First Amendment rights were adversely affected. Although threats alone, especially the threat of retaliatory arrest, can constitute an adverse action, the Plaintiff does not allege that a threat was made. The fact that Plaintiff was initially treated as a suspect, when the responding officers arrived, is not sufficient to constitute a threat. Further, his "treatment as a suspect" did not persist. In fact, at some point, the responding officer clearly designates the Plaintiff as a victim by stating to the assailants "You got the wrong guy." (Compl. at ¶ 50.) Moreover, the Plaintiff alleges that

---

[7] A retaliation claim can arise under the Free Speech Clause or the Petition Clause. The legal framework for retaliation claims is the same for both, even though the protections under each clause are somewhat different. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388-89 (2011).

one of the responding officers *asked him* if he would like to press charges. (*Id.* at ¶ 60.) There is no allegation that this question was stated in a way to imply a threat or that he was ever told that pressing charges against his assailants would result in his arrest or any other form of retaliation.

A threat of retaliation should be clear, not ambiguous. *Kubala v. Smith*, 984 F.3d 1132, 1140 (6th Cir. 2021). The Plaintiff's allegation, that he was initially treated as a suspect, does not support an inference of a threat. Further, this alleged treatment did not continue according to the Complaint. The Plaintiff was asked if he would like to press charges by one of the non-assailant Defendants. The Plaintiff told the responding officers that "he had intentions to press charges," but there are no allegations that the responding officers reacted to that statement with any threat, express or implied.[8] (Compl. at 64.) The Plaintiff's conclusory allegation, that his initial treatment as a suspect amounted to "intimidation tactics," does not support a plausible claim that a clear threat of retaliation was made. In sum, there are no factual allegations of an express threat and there are no factual allegations from which a reasonable inference of such a threat can be drawn. The Plaintiff simply has not plausibly alleged that the non-assailant Defendants' conduct constituted "adverse action."

2. **Failure to Investigate**

Aside from retaliation, the Plaintiff argues that the non-assailant Defendants, "by failing to pass the Plaintiff's allegations through the necessary chain of command or the flat out refusal to investigate," have violated his First Amendment rights. (Compl. at ¶ 106.) Specifically, the

---

[8] Sometimes an officer's verbal response can contain an implicit threat. *See, e.g.*, *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (defendant prison official's warning that plaintiff should be "careful" about what he writes in grievances raised "a genuine issue of material fact" as to whether the warning was an implicit "threat of transfer or disciplinary action if he was not 'careful' as to what he wrote in his grievances"). However, no such implicit verbal statement is alleged to have been made here.

10

Plaintiff argues that the Petition Clause requires the police to do "more than begrudgingly hear him out," and their failure to act has the same effect as refusing to take the report. (Pl. Resp. at 16.) However, the Plaintiff concedes that he "has been unable to find any case law that analyzes an officer's duty to move a criminal complaint up the chain of command." (*Id.* at 15.)

"Interpretation of the Petition Clause must be guided by the objectives and aspirations that underlie the right." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011). "The right to petition allows citizens to express their ideas, hopes and concerns to their government." *Id.* Petitions have "allowed participation in democratic governance even by groups excluded from the franchise." *Id.* at 397. The act of petitioning not only facilities a route for redress but also enables "informed public participation" within our democracy. *Id.*

Here, the non-assailant Defendants' failure to investigate or otherwise respond to the Plaintiff's criminal complaint does not constitute a violation of the Petition Clause. The Petition Clause enshrines the right to be heard, not a right to force the government to act. *See, e.g.*, *Stengel v. City of Columbus, Ohio*, 737 F. Supp. 1457, 1459 (S.D. Ohio 1988) ([t]he right to petition government does not create in the government a corresponding duty to act"). Petitioning itself is part of the democratic process, which ultimately requires that the petitions of some will not be followed. The Plaintiff argues that because no investigation was done, and no charges were brought against his assailants, his right to petition has been impinged. However, the Plaintiff's right to petition only reaches the act of making the criminal complaint and does not guarantee in any way his desired redress.

In different contexts, outside of the First Amendment, other courts have agreed that a victim of a crime does not have a constitutional right to order the investigation of, or protection

from, the perpetrator. *DeShaney v. Winnebago County Dept. of Soc. Services*, 489 U.S. 189, 197 (1989) ("a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause"); *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988) (even when there is an alleged conspiracy to cover-up police misconduct, there is no constitutional right to have the assailants criminally prosecuted); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982) ("the Constitution . . . does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order").

The Court, having accepted the Plaintiff's factual allegations as true and having given the Plaintiff the benefit of all reasonable inferences, finds that the Complaint does not establish that the actions of the responding officers deprived him of his First Amendment rights, as required to state a claim under 42 U.S.C. § 1983. The Plaintiff's claim under Count III should be dismissed.[9]

### B. The Fourteenth Amendment Claims

The Plaintiff alleges that both the Defendants violated his Fourteenth Amendment right to Due Process. Relevant here, the Plaintiff raises claims duplicative of his First Amendment claims, stating that the non-assailant Defendants denied him his Due Process rights by first "treating Mr. Coss like he was the criminal" at the scene of the attack to dissuade him from making a criminal complaint, and then intentionally ignoring the Plaintiff's criminal complaint. (Compl. at ¶¶ 122, 124.)

---

[9] Although the Court is concerned with and does not condone conduct that indicates law enforcement may be deliberately ignoring allegations of assaults by other law enforcement officers, this Court only considers whether the Plaintiff has stated a valid claim under 42 U.S.C. § 1983.

**1. Retaliation and Criminal Complaints**

The Fourteenth Amendment provides that a State may not deprive "any person of life, liberty, or property, without due process of law." The Due Process Clause extends to protect the liberty interests contained within the First Amendment. *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958). However, the Plaintiff has offered no authority, and the Court finds none, suggesting that the Due Process Clause establishes a greater right to petition the government than the Petition Clause does. Additionally, as discussed above, the Plaintiff has not sufficiently alleged that he was *deprived* of his First Amendment interest in petitioning the government. With no deprivation of liberty, there is no violation of Due Process.[10]

**2. Failure to Investigate**

Second, the Plaintiff argues that his Due Process rights have been ignored by the non-assailant Defendants by their failure to investigate and prosecute his assailants. However, as previously discussed, "[a] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Sattler*, 857 F.2d at 227 (there is no constitutional right in the prosecution of another). For those reasons, the Plaintiff's claims that he has been deprived of Due Process by the non-assailant Defendants fails.

**C. Punitive Damages Claim**

Other than Counts III and IV, only Count V, a claim for punitive damages, names the non-assailant Defendants. However, "West Virginia does not recognize a separate cause of action for

---

[10] The Plaintiff, in his response, argues that he can successfully bring a claim for a violation of the Equal Protection Clause of the Fourteenth Amendment. However, the Equal Protection Clause is nowhere mentioned in the Complaint, nor does the Complaint contain sufficient allegations to establish such a claim.

13

punitive damages." *Davis v. Milton Police Dept.*, 3:20-cv-36, 2020 WL 2341238, at *8 (S.D. W. Va. May 11, 2020) (Chambers, J.) (citing *S.F. v. Higginbotham*, 2:18-cv-94, 2019 WL 286746, at *3 (N.D. W. Va. Jan. 22, 2019). Without an underlying cause of action against the non-assailant Defendants, they cannot be liable under Count V.

## CONCLUSION

Wherefore, after thorough review and careful consideration, for the reasons stated herein, the Court **ORDERS** that the *Motion to Dismiss Defendants Conner Abraham, Jacob Dennison, Tyler Windland, Cody Miller, John Doe 7, and John Doe 8*, (Document 9) be **GRANTED.** Specifically**,** the Court **ORDERS** that Counts III, IV and V be **DISMISSED** against the moving, non-assailant Defendants.[11]

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: May 12, 2023

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

[11] Again, the Complaint contains two Count IVs. The motion to dismiss and this Order only encompass the second Count IV, which alleges a violation of the Plaintiff's Due Process rights.

14